URBAN RESEARCH STUDIES AND DEVELOPMENT, LTD., a
Hawaii corporation, Plaintiff-Appellant, *v.* TERUYA & SONS,
LIMITED, a Hawaii corporation, Defendant-Appellee

NO. 7834

(CIVIL NO. 55682)

FEBRUARY 2, 1982

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY PADGETT, J.

The action below was one for specific performance of an alleged
agreement to extend an option for the lease of land. Summary
judgment was granted in favor of defendant-appellee, the optionor,
on the ground that plaintiff-appellant had exercised the option and
there thus was no occasion for an extension of the same. In addition,
the court below denied appellant's motion to amend its complaint by
adding a second count which, in effect, alleged the frustration of the
option agreement by breaches thereof on the part of the appellee.
The transcript of the hearings indicates that the motion to amend
was denied because the court felt that in view of its ruling on the
motion for summary judgment, appellant could not prevail upon its
second count in any event.

Both parties at oral argument agreed that for the purposes of this appeal, we could consider all correspondence between the parties and/or their attorneys attached to their various motions and memoranda as genuine. These include the letters of March 21, April 18, April 19 and July 10, 1978. Of course, we must also consider the depositions in the record. *Ottensmeyer v. Baskin*, 2 Haw. App. 86, 625 P.2d 1069 (1981).

The decision of the court below appears to turn upon its construction of the letter of April 18 as an exercise of the option.

However, both the option agreement and its extension are silent as to the manner in which the option is to be exercised. Appellant urges us that in such a situation, we should hold that an option is only exercised when the optionee tenders the purchase price and does the other things necessary to perform the purchase. Appellant is supported in this by the case of *Hurd v. Cormier*, 358 Mass. 736, 267 N.E.2d 116 (1971), where the Massachusetts court said:

> In addition it is the rule in Massachusetts that where an option speaks in terms of purchase within a specified time, without reference to notice by the option holder of his intention to exercise the option, acceptance can be only by tender of the specified price. Notice of intention to exercise, without tender of payment, does not bind the owner to convey.

267 N.E.2d at 118.

Appellee, on the other hand, urges that the sending of the letter of April 18 was legally an acceptance of the offer. Appellee cites *Doolittle v. Fruehauf Corp.*, 332 So.2d 107 (Fla. App. 1976), where the court stated:

> From the outset, it should be noted that the lease did not specify the manner in which the option was to be exercised nor did it set forth any time or procedure for closing the purchase in the event the option was exercised.
>
> It is not necessary to tender purchase money as a condition precedent to exercising an option, if this condition is not expressly stated in the option. . . .
>
> The two steps which are necessary to exercise an option are: (1) there must be a decision by the optionee to purchase the property under the terms of the option; (2) the optionee must communicate the decision to the optionor within the life of the option. . . .

332 So.2d at 109.

In this case, curiously enough, the optionee is urging that its letter was not an exercise of the option while the optionor is urging that it was. Normally, as in the two cases cited, the positions would be reversed because normally, the problem comes up in a situation where the optionee is claiming that it exercised the option and the optionor is claiming that it did not. Here, the optionee is claiming that it did not exercise the option and that therefore, it had a right to tender payment for an extension as provided in the amended option agreement, while the optionor contends that the optionee did exercise the option by the letter of April 18, 1978, and that therefore, the option agreement was terminated and could not be extended.

We are unwilling to adopt either the Massachusetts or Florida rule for the reason that in this jurisdiction:

The intention of the parties to a contract is paramount to the manner chosen to effect it. The courts of Hawaii have long followed this axiom that the intention of the parties governs the meaning of legal instruments in the construction of contracts.

*In Re Taxes, Aiea Dairy, Ltd.,* 46 Haw. 292, 298, 380 P.2d 156, 160 (1963).

This case comes before us on a summary judgment. Since the option agreement and its amendment are silent as to the manner and method of exercise of the option, we think the manner and method of exercise must depend upon the intention of the parties which is to be gathered from the documents and depositions before the court below. We think there was a genuine issue of material fact as to that intention and accordingly, reverse.

The letter of April 18, 1978 to appellee from appellant's attorney appears to be, on its face, an exercise of the option. No question is raised about the authority of the attorney to act on behalf of the appellant. However, the next day, April 19, the attorney by letter attempted to clarify the previous letter by stating that:

This is to clarify the notice as to the effective date thereof.

Please be advised that the effective date the option will be exercised is July 28, 1978.

Under the extension agreement, appellant had until July 29, 1978 to exercise the option. The letter of April 19, 1978, standing alone, could be construed to be a mere notice of intent to exercise the

option at a future date rather than a notice of the exercise itself.

The letter of July 10, 1978 to Hampton, who was the person handling the matter for appellant, from appellee's attorney purports to be in reply to a letter of June 26, 1978 (which is not attached either in certified and sworn to or in uncertified and unsworn to form by any party). In the July 10 letter, appellee's attorney takes the position that the option agreement has been invalidated but to avoid litigation, the option would be recognized if the terms thereof are strictly followed. Thus, on its face, that letter appears to recognize the continuing existence of an option.

The deposition of Karen Teruya, who purported to be a trustee of appellee, contains the following:

A. The next communication we received was in April '78, from Mr. Tashima to my dad, Robert Teruya, and at that time, he gave notice that they were exercising the option to lease the land and purchase the building according to the prior agreements.

Q. Was there a communication or response made to that letter?

A. No, there was not. In April, again, the day after the first communication I just mentioned, they stated that the effective date of the option, that the option would be exercised, was July 28, 1978.

She further testified that there was a decision made by the corporation not to respond to the letters of March 21, April 18 and April 19. She then went on to testify that in June of 1978, appellee received a letter stating that Bob Hampton and Jim Ariyoshi were planning to acquire the right to buy the building and lease the land and that they responded through Mr. Takushi's letter of July 10, 1978:

A. Yes, we did respond in July, and we responded that we were still maintaining our position that the agreement had been invalidated.

Apparently, at that point, a decision was made to recognize the option if the terms were strictly followed and this was included in that letter. Her position was that the failure to pay $450,000 to appellee thirty days after May 1, 1978 was a failure to comply strictly with the terms of the option. However, in July, according to her testimony, when the Takushi letter was sent, they were still waiting

for the $450,000 and were willing to give a reasonable amount of time for the payment of the $450,000.

The deposition of Robert Hampton indicates that when the letter of April 18 was sent:

A. The procedure for exercising was initiated with this letter in our mind. Obviously, we needed the receipt of the ground lease so we had complete—

Q. So you would have a reasonable time to close; am I correct?

A. That's correct.

Q. In other words, any action contemplates some formal documentation?

A. Absolutely.

Q. Okay. Referring you now to Exhibit 16. Now, did it come about, Mr. Hampton, that one day Mr. Tashima sent a letter purporting to clarify his letter of April 18, 1978?

A. Well, we were trying to set a time period in which this procedural documentation could be accomplished, and that question had come up as to exactly what had to occur.

Q. Let me ask you this, Mr. Hampton: Did it come up following the sending of Exhibit 15 and before the sending of Exhibit 16, or had it come up before the sending of Exhibit 15?

A. No, I think it came up as a result of phone conversations between Robert Teruya— I'm sorry. Between Roy Takushi and Vernon Tashima regarding the exercise of the option.

Q. I see. So what you're saying is that Mr. Takushi probably received a copy of Exhibit 15 from Robert Teruya and then Mr. Takushi had a telephone conversation with Mr. Tashima, correct? Is that your assumption?

A. That's my assumption.

Q. And then, as a result of that, Exhibit 16 was written by Mr. Tashima?

A. That's right.

Q. Setting forth that the effective date of the option will be exercised on July 28, 1978. And according to your testimony, this is to give you sufficient time to complete documentation?

A. That's right.

In the light of the depositions and the letters referred to, we

think there is a genuine issue of material fact as to whether the option in question was "exercised".

The court below did not pass upon appellee's contentions that the letter of March 21, 1978 was an exercise of the option or that the option was no longer valid because of optionee's actions and obviously, the record is insufficient for us to make a determination of that issue.

We cannot, on the record, pass upon the dispute as to when a rent roll was requested, whether such a roll was necessary in order to effectuate a closing of the transaction, or the question of whether appellee was required to furnish such a roll. We determine no factual issue other than that there is a genuine issue of material fact as to whether the option was or was not "exercised" by the appellant.

That determination necessitates reversal of the order granting summary judgment and, given the reasons assigned by the court below for its order denying the motion to amend, that order also. The case is reversed and remanded for further proceedings consistent herewith.

*Richard F. Dvonch* for appellant.

*Ton Seek Pai (Okumura, Takushi, Funaki & Wee* of counsel) for appellee.